Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 268-7080
spencer@spencersheehan.com

United States District Court
Southern District of New York                              7:21-cv-00192

| | |
|---|---|
| Lisa Sibirtzeff, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Royal Appliance Mfg. Co., | |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Royal Appliance Mfg. Co. ("defendant") manufactures, labels, markets and sells vacuum cleaners under the "Hoover" brand ("Product").

2.      Defendant misrepresents the Products as being made in the USA.

3.      American consumers want to buy products that are made in the United States for various reasons.

4.      These reasons include supporting American jobs and companies operating here, greater regulations which are connected to an expectation the product will be safer than if it were made elsewhere and feelings of patriotism.

5.      Defendant's marketing of its vacuum cleaners seeks to take advantage of this sentiment, by labeling its products with a "seal" that states "Made in the USA," in red, white and

blue colors with stars, like the American flag.



6.    In much smaller, less conspicuous type are the words "With Globally Sourced

Components."



7.     The "With Globally Sourced Components" fails to adequately qualify the "Made in the USA" claim, which is misleading to consumers.

8.     Defendant's website and other marketing focus on the Products' American's origins.

9.     A YouTube video from Defendant is titled, "Made in the USA – Meet the people behind Hoover PowerDash."

10.    In the video, workers at Defendant's facility in Cookeville, Tennessee, describe the importance of the "USA" claims: "When it says 'made in America,' I take pride in the fact that it's made in Cookeville, that it's made here, that we made it."

11.    Another employee echoes the sentiment of the more than 70% of Americans who seek to purchase products made in the USA: "It makes me want to purchase that specific product because I know that my people made this."

12.    Defendant's representations of its Products as "Made in the USA" is false, deceptive and misleading to consumers because they are not made in the USA.

13.    Defendant receives most of the parts and components for the Products from China, as revealed by a search of United States Customs records.

14.    The customs records reveal Defendant imports the "globally sourced components" – vacuum cleaner parts, designated with the HS (Harmonized System) code 8509.90.[1]

---

[1] HS codes are internationally recognized numbers used for classification of imports and exports.

| DATE | HS CODE | PRODUCT DETAILS | WEIGHT IN KG | QTY / UNIT | COUNTRY / PORTS | SUPPLIER | BUYER |
|------|---------|-----------------|--------------|-----------|-----------------|----------|-------|
| 18-Oct-2020 | 850990 | VACUUM CLEANER CY/DOOR SEAWAY BILL FREIGHT COLLECT S/C: 20-4371 PRAIA GRANDE,MACAU FAX 912-236-1001 EMAIL: TTIFLOORCAREGROUP CARMNET.COM | 14985.0 | 2217.0 PCS | CHINA LOS ANGELES CA | TECHTRONIC CORDLESS GP MACAU BRANCH | ROYAL APPLIANCE MFG CO |
| 25-Oct-2020 | 850990 | VACUUM CLEANER | 11185.0 | 2400.0 CTN | CHINA LONG BEACH CA | TECHTRONIC CORDLESS GP MACAU BRANCH | ROYAL APPLIANCE MFG CO |
| 25-Oct-2020 | 850990 | VACUUM CLEANER VACUUM CLEANER | 15165.0 | 4892.0 CTN | CHINA LONG BEACH CA | TECHTRONIC CORDLESS GP MACAU BRANCH | ROYAL APPLIANCE MFG CO |

15.    The company which exports the components from China to the U.S. is Defendant's parent company, a Chinese firm named Techtonic Industries, headquartered in Hong Kong.

16.    The representation that the Products are "Made in the USA With Globally Sourced Components" is misleading because it blurs the distinction between manufacturing and assembly of the components.

17.    To label a product with an unqualified "Made in USA" claim, there must be a substantial transformation had occurred.

18.    Most to all of the inputs for the Products are manufactured in other countries, even though the final product may be assembled in the United States.

19.    Defendant does not obtain raw materials from other countries which it converts into parts which will eventually become the vacuum cleaners purchased by plaintiff and consumers.

20.    The name, form and character of each component of the Products remain unchanged after they are assembled into the finished vacuum cleaners.

21.    Most to all of the total manufacturing costs are attributed to overseas parts and processing.

22.    At best, the Products could be truthfully described as being "Assembled in the USA," if the assembly involves complicated processes and skill.

23.    A product can be labeled as "Assembled in USA" only if more than a "screwdriver" assembly occurs.

24.    This refers to a situation where parts are made outside of the USA but assembled with little more than a screwdriver into the final product.

25.    Defendant's representations mislead consumers about the origins of the Products.

26.    The qualifications fail to inform consumers the Products are not made in the USA but at best, assembled in the USA.

27.    "Globally Sourced Parts" is true, yet also misleading.

28.    While there is no requirement that Defendant disclose – beyond where it is required to – that most of the components may come from China – once Defendant has chosen to speak on the matter of the Products' origins, it is required to not be misleading.

29.    Through the prominent and conspicuous "Made in the USA" claim, Defendant has sought to appeal to Americans who want to keep jobs in this country.

30.    41% of Americans have a less than positive opinion about buying goods from China, according to a recent Newsweek article.[2]

31.    For better or worse, American consumers have negative perceptions of goods from China.[3]

32.    A recent study by the Boston Consulting Group has shown that Americans will pay

---

[2] Daniel Villarreal, 41% of Americans Say They Won't Buy Products Made in China, While 35% of Chinese Say They Won't Buy American-Made Goods, May 15, 2020, Newsweek.com
[3] Geoffrey James, Made in China = Piece of Junk, October 7, 2010, MoneyWatch.com; David Volodzko, How 'Made in China' Became a Stigma – Is there any hope that "Made in China" can overcome its current negative connotations?, July 16, 2015, The Diplomat; Marc Schniederjans et al., Consumer Perceptions of Product Quality: Made in China, Quality Management Journal. 11. 8-18, January 2004.

a price premium for products made in the USA.

33.    Additionally, even Chinese consumers will pay more for products made in the USA, indicating that products made in the USA are valued not out of a blind patriotism, but because consumers globally recognize the craftsmanship behind the products.

34.    Further, global consumers know that a product made in America has American companies behind it, who are unable to cut corners in the same way companies that operate in other countries can do, resulting in a product that is typically safer and higher quality.

35.    Defendant misrepresented the Product through affirmative statements and omissions.

36.    Defendant sold more units of the Product and at higher prices than it would have in the absence of the misrepresentations and omissions, resulting in additional profits at the expense of consumers like plaintiff.

37.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

38.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

39.    The Product is sold for a price premium compared to other similar products, no less than $89.99 for the PowerDash GO Pet+ Spot Cleaner, a reasonable exemplar of the Products bearing the claims referenced herein, higher than it would otherwise be sold for absent the misleading representations.[4]

---

[4] The Products vary in price based on the particular model and features.

## Jurisdiction and Venue

40.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

41.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

42.     Plaintiff Lisa Sibirtzeff is a citizen of New York.

43.     Defendant Royal Appliance Mfg. Co. is an Ohio corporation with a principal place of business in Charlotte, Mecklenburg County, North Carolina.

44.     Diversity exists because plaintiff Lisa Sibirtzeff and defendant are citizens of different states.

45.     Upon information and belief, sales of the Products and statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

46.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – plaintiff's purchase of the Product.

47.     Venue is further supported because many class members reside in this District.

## Parties

48.     Plaintiff Lisa Sibirtzeff is a citizen of Huguenot, Orange County, New York.

49.     Defendant Royal Appliance Mfg. Co. is an Ohio corporation with a principal place of business in Charlotte, North Carolina, Mecklenburg County.

50.     Defendant is one of the world's largest manufacturers of vacuum cleaners under the Hoover brand.

51.    Hoover vacuums are sold by retail and online stores of third-parties.

52.    During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Products within her district and/or State in reliance on its representations and omissions.

53.    Plaintiff bought the Product within the statute of limitations and relied on the challenged representations.

54.    Plaintiff bought the Product at or exceeding the above-referenced price for her particular model because she wanted to buy a product with the qualities and attributes represented herein.

55.    Plaintiff would not have purchased the Products in the absence of Defendant's misrepresentations and omissions.

56.    The Products were worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

57.    Plaintiff intends to, seeks to, and will purchase the Products again when she can do so with the assurance that Products' labeling is consistent with its composition and origins.

<u>Class Allegations</u>

58.    The class will consist of all purchasers of the Products who reside in New York during the applicable statutes of limitations.

59.    Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

60.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

61.    Plaintiff's claims and basis for relief are typical to other members because all were

subjected to the same unfair and deceptive representations and actions.

62.     Plaintiff is an adequate representative because her interests do not conflict with other members.

63.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

64.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

65.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

66.     Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

67.     Plaintiff incorporates by reference all preceding paragraphs.

68.     Plaintiff and class members desired to purchase a product which was made in the USA, because they believed that American-made products are higher quality than products made elsewhere, wanted to support jobs in their country and feel pride in "buying American."

69.     Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

70.     Defendant misrepresented the Products through its statements, comparisons, omissions, ambiguities and actions.

71.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

72.   Plaintiff incorporates by reference all preceding paragraphs.

73.   Defendant had a duty to truthfully represent the Products, which it breached.

74.   This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

75.   Defendant did not have a duty to disclose the large percentage of the Products that were from China until it chose to speak by stating "Made in the USA…With Globally Sourced Components."

76.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

77.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

78.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Fraud

79.   Plaintiff incorporates by reference all preceding paragraphs.

80.   Defendant misrepresented the attributes, origin and qualities of the Products.

81.   Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

82.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

10

<u>Unjust Enrichment</u>

83.   Plaintiff incorporates by reference all preceding paragraphs.

84.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 11, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409

Case 7:21-cv-00192 Document 1 Filed 01/11/21 Page 12 of 13

Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:21-cv-00192
United States District Court
Southern District of New York

Lisa Sibirtzeff, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Royal Appliance Mfg. Co.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  January 11, 2021

/s/ Spencer Sheehan
Spencer Sheehan